## Bernard Cresinger v. Samuel Reed.

*Slander: Evidence.*   In an action of slander, it is not competent to ask a witness, who has testified to a conversation with the defendant after the commencement of the suit, giving the words used by defendant concerning the plaintiff, what he understood the defendant to mean by the words used; what he meant by what he said, is a question for the jury to determine, in view of all attendant and connected circumstances.

*Statute construed: Slander: Pleadings: Notice of special defense: Justification.* Our statutes relating to notices of special matter of defense to be annexed to the plea of the general issue, make no distinction between different kinds of action, and apply to justification in actions of slander; and it is not requisite that such notice should contain the substance of a special plea, or that the matter in it should be such as, if pleaded, would be good on general demurrer

but it is sufficient if it "briefly state the precise nature of the matter of defense."—*Rosenbury v. Angell,* 6 *Mich.,* 508 ; *McHardy v. Wadsworth,* 8 *Mich.,* 349.

*Submitted on briefs July 13. Decided October 8.*

Error to Clinton Circuit.

*Spaulding & Cranson,* for plaintiff in error.

*R. Strickland* and *H. Walbridge,* for defendant in error.

GRAVES, J.

This is a writ of error to the circuit court for the county of Clinton. Reed sued Cresinger in slander, and the accusation imputed was, that Reed kept a house of ill-fame. The plaintiff in error pleaded the general issue, with a notice that he would give in evidence on the trial, and insist upon the same as a defense to the action, that, at and before the time and times of the uttering and publishing of the words, as complained of in the said plaintiff's declaration, the said plaintiff had been, and was, guilty of the facts and acts charged and imputed to him by the said defendant in the said several conversations, in the said plaintiff's declaration mentioned; and that, if the words were uttered and published, as charged in the said plaintiff's declaration, the said defendant had good reason to believe, and did believe, that said charges were true; and that it was matter of common report in the community wherein the said plaintiff then resided, that he did let rooms in his house in the village of Maple Rapids, for hire, for the purpose of prostitution, and that such reports had previously, and often, come to the knowledge of the said defendant.

The plaintiff below, having given evidence of the slander as set up, inquired of one of his witnesses if he had had any conversation with Cresinger, the defendant

below, after the commencement of this suit, in relation to Reed and his house, to which the witness replied in the affirmative. The plaintiff's counsel then asked what that conversation was, and the witness replied as follows: "He and I were talking concerning the matter, and he said we could not tell until after election who had the cost to pay. He said, in case Reed got beat, that the girls would have to charge double price, and divide the money with Mr. Reed. We were speaking about the suit." The plaintiff's counsel then put the following question: "What did you understand him to mean that the girls would have to charge double price for?" This was objected to, but the objection was overruled, and the witness answered: "From the talk he and I had at that time, I supposed he meant the money that they took for agents lodging with them; that is the way I took it."

I think the objection should have been allowed. The witness had given the whole conversation, and it was for the jury, in view of all attendant and connected circumstances, to decide what the defendant meant by what he said. The conversation was shown in order to characterize and deepen the act sued for, and if it was such, according to general understanding of language, as to bear the sense asserted by its introduction, it is to be assumed that the jury would so appreciate it. If, on the contrary, when considered in the light of the facts and circumstances, it was not qualified to bear the meaning claimed for it by its introduction, the understanding or imagination of the witness, was not admissible as a sworn authority to decide otherwise. This I believe to be the fair result on principle, and no case of authority has been cited, nor is any recollected, where it has been decided, that a witness might swear to his understanding of the meaning of a defendant in his utterances, proved as repetitions of the slander.

· The next and remaining point relates to the notice of justification.  The defendant offered to prove the truth of the words, but this was objected to, on the ground that the notice was insufficient, and the evidence was accordingly excluded.

It would seem that this ruling was supposed to be required by the case of *Thompson v. Bowers, 1 Doug., 321,* and other cases resting on similar grounds.  *Bowers v. Thompson* arose under a system which recognized special pleading, and allowed a notice in certain cases in lieu of a special plea. *Sections 27 and 28, added to ch. 8, title 2, part 3d, of the R. S. of 1838,* by the legislature of 1839, will show how the subject was regulated.  They are as follows:

"SEC. 27. The defendant in any action may plead as many several matters as he shall think necessary for his defense, subject to the power of the court to compel him to elect by which plea he will abide, in cases where he may plead inconsistent pleas.

"SEC. 28. Whenever a defendant shall plead the general issue in any action in which such issue may be pleaded, or whenever he shall plead *nil debit* to an action of debt on judgment, or whenever in an action of covenant he shall, by his plea, deny the execution of the instrument on which the plaintiff may have declared, he may give notice with such plea of any matters which, if pleaded, would be a bar to such action, and may give such matter in evidence on the trial, in the same manner as if the same had been pleaded."—*Sess. L. 1839, pp. 225, 226.*

It will be observed that, as an action for slander admitted a plea of the general issue, this statute allowed a defendant, in any such action, to justify under a notice, instead of a plea, if he wished to do so, and that, as to the formal qualities of the notice, it made no distinction between one kind of action and another.   The essential

requisites of the notice, as to fullness, precision, and certainty, were left to be settled according to the nature of the proceeding, and by analogy to the rules governing those special pleas for which it was allowed to be substituted.

From the nature of the thing itself, and because the practice which allowed it, was thought to have been introduced to permit escape from the niceties of special pleading, it was held that it need not partake of the form and strict technicality of a special plea. But, as some rule seemed to be necessary, and the spirit, if not the language, of the law was thought to require, and lead to it, it was laid down by the courts, that the notice, in order to be good, must contain the substance of a special plea, and that the matter in it must be such as, if pleaded, would be good on general demurrer. And this was the rule which the court applied, in *Thompson v. Bowers.*

The revision of 1846, however, abrogated the old system, and introduced a different one; and this alteration removed the foundation on which the old practice rested, and replaced it by a different ground. Special pleas in bar were absolutely forbidden, and it was declared, that all matters of defense to any civil action, might be given in evidence under the general issue (*Comp. L.*, § *4176*); that such issue should consist of a demand, by the defendant, of a trial of the matters set forth in the plaintiff's declaration (*Comp. L.*, § *4177*); and that, to entitle a defendant to avail himself of any matter of defense, which, according to the former practice, was required to be pleaded specially, or of which a special notice was required under the general issue, or other general plea, he should annex to his plea of the general issue a notice to the plaintiff, briefly stating the precise nature of such matter of defense.—*Ibid,* § *4178.*

It is manifest that actions for slander are as absolutely embraced by these regulations as they were by the statute

CRESINGER v. REED.

of 1839. It is also plain, that no distinction is made between one kind of action and another, as to the general requisites of the notice. We must assume, that the legislature were aware of the former rule and practice, and knew that the courts made the rule regulating the substantial ingredients essential to a special plea, the standard for measuring the sufficiency of the notice; and it is not only reasonable, but necessary, to presume that, when they declared that the notice should be sufficient if it "briefly stated the precise nature of the matter of defense," they intended to introduce a different and much milder test; a test given by themselves in the words quoted.

After attentive consideration, no reason is perceived for supposing that the relaxation introduced by the revision of 1846, and admitted to be applicable to other cases, was not intended to apply to a justification in actions for slander, as well as to other matters of defense. Certainly, the statute, so far from countenancing any distinction, is believed to point clearly the other way.

If the notice in question is tried by the standard given by the statute of 1846, and not by the old rule, it is clearly sufficient, and I am of opinion that it should be tried by that statute. As I think *Rosenbury v. Angell*, *6 Mich., 508*, and *McHardy v. Wadsworth*, *8 Mich., 349*, rule this point, I should have gone no further than to cite those cases as decisive, if it had not been supposed, as I gather, that the defense of justification in slander, stands on distinct ground.

The judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.