CHARLES E. BAILEY v. KALAMAZOO PUBLISHING COMPANY.

*Libel—Notice of justification—Variance.*

The notice of justification attached to the plea in a libel suit, stated that 'the defendant would prove the truth of the allegations in said declaration contained.' *Held* that this evidently meant the allegations in the libels complained of, and that it was not too general.

Where the defendant in a libel suit gives notice of a general justification without serving particulars, he must prove the truth of the libelous statements precisely as charged in the declaration.

There is no substantial variance between an allegation that a man has been indicted, and proof that he has been prosecuted and convicted in justice's court on information.

There is a variance between a charge made against a justice of the peace that he stole whiskey-fines, and proof that he had not paid over a fine which he had imposed for an assault.

Courts take judicial notice of the meaning of current phrases which every body else understands.

The following words were printed of a clergyman: "Then there was that Iowa Beecher business of his which beat him out of a station at Grass Lake." He sued for libel alleging that they implied a charge of adultery. A general notice of justification was filed with the plea. *Held* that to justify the words, the defendant must have shown a loss of position at Grass Lake upon some charge of immoral conduct affecting the plaintiff's clerical character.

A "pettifogging shyster" is an unscrupulous practitioner who disgraces his profession by doing mean work, and resorts to sharp practice to do it.

General reputation is sufficient to justify the charge that a lawyer is a pettifogging shyster.

Evidence to justify statements published after the commencement of a suit for libel is not admissible.

It is not error to allow the defendant in a libel suit to show on what ground he based his information.

Damages for a libel upon a candidate for public office are reduced to a minimum if the libel results from an honest mistake made in an honest effort to enlighten the public as to his character.

Where a libelous charge is made against a candidate, and there is only a technical variance between the charge and its justification, proof that the party making it honestly believed it, should be received to show that there was no wrong intent.

Error to Kalamazoo. Submitted November 19, 1878. Decided January 28, 1879.

LIBEL. Plaintiff brings error. The facts are stated.

*Powers & Daniels* for plaintiff in error. Notice of justification in libel cases must state precisely the matter of defense, Comp. L., § 5792; *Rosenbury v. Angell*, 6 Mich., 514; *M'Hardy v. Wadsworth*, 8 Mich., 349; *Cresinger v. Reed*, 25 Mich., 451; evidence in mitigation of damages is inadmissible where justification is pleaded, *Smith v. Shumway*, 2 Tyler (Vt.), 74; *Huson v. Dale*, 19 Mich., 17; *Shelton v. Simmons*, 12 Ala., 466. One who complains of the use of ambiguous language in regard to him, can show that it has an actionable meaning, 2 Greenl. Ev., § 417; Folkard's Starkie on Slander and Libel, §§ 562–3; damages for libel are not mitigated by giving the name of the author, or showing that it has been copied, *Dole v. Lyon*, 10 Johns., 447; *Mapes v. Weeks*, 4 Wend., 659; *Hotchkiss v. Oliphant*, 2 Hill, 510; *Sheahan v. Collins*, 20 Ill., 326; evidence in justification must be limited to the charges made, *Powers v. Skinner*, 1 Wend., 451; *Stilwell v. Barter*, 19 Wend., 487; *Fidler v. Delavan*, 20 Wend., 59; *Fero v. Ruscoe*, 4 N. Y., 163; in an action for libel, damages can be given for articles published by defendant after the beginning of suit, *Leonard v. Pope*, 27 Mich., 145; *Fry v. Bennett*, 28 N. Y., 324; publications concerning candidates for office are not governed by any different rules than those concerning other persons, *Rearick v. Wilcox*, 81 Ill., 77; 3 Cent. Law Journal, 572.

*Brown, Howard & Roos, Dwight May* and *Henry F. Severens* for defendant in error. In a libel suit based upon a charge of crime, it is a justification to show guilt of all the crimes named in the innuendo, *Stowell v. Beagle*, 57 Ill., 98; *Strader v. Snyder*, 67 Ill., 412; professional bad character can be shown under the general issue where plaintiff specially alleges his professional

standing, *Adams v. Smith*, 58 Ill., 417; the defendant can show that the libel was started by another, *Farr v. Rasco*, 9 Mich., 353; *Huson v. Dale*, 19 Mich., 17; the people have a right to review the whole life, standing, character and reputation of a candidate, *Whiteley v. Adams*, 15 C. B. [N. S.], 392.

CAMPBELL, C. J.    Bailey being a candidate for Congress on the prohibition ticket, the defendant company published several newspaper articles against him containing some direct charges against his moral character and integrity, and some comments of a very harsh character, all of which were published in connection with the slanderous allegations, and would be privileged by the occasion if those allegations were true. The contest, therefore, on the trial, was confined to an attempt at justification, and to proof in mitigation.

The charges, which need not be quoted at length, were as follows: *First*, "that he is now under indictment for malfeasance in office as justice of the peace in his former home, and has no moral backing whatever." *Second*, "The last we knew of this Bailey he was convicted of stealing whiskey fines while a justice of the peace in this county, and sentenced to pay a fine of $50 and costs or go to jail." *Third*, "Then there was that Iowa Beecher business of his, which beat him out of a station at Grass Lake. But pshaw, these reformers are pretty much all alike." This latter charge was connected with statements indicating him to be a minister of the Gospel, and the declaration claimed it to mean that he had lost a position on a charge of adultery. *Fourth*, that he was a "pettifogging shyster," he being a member of the bar.

So far as the principles of law laid down in the charge are concerned, they accord with the general understanding. The court charged that it was allowable in good faith to comment on the actual conduct of a candidate in such matters as the public were entitled

to know, but that there was no right to publish untrue statements such as were above referred to. It was further charged in substance that malice would be mitigated by an honest publication in good faith of what was based on reasonable grounds of belief, but that if there was not such an honest intent, mere belief would not excuse actual malice.

The verdict of the jury could not have been given under the charge unless they found the truth of the charges made out fully, and the court substantially instructed them that there was evidence to act upon in so finding. They did not give damages of any kind, but found for the defendant no cause of action.

The notice of justification appended to the plea was in these words: "The defendant will prove the truth of the allegations in said declaration contained." Two objections were made to the reception of proof in justification: *first*, that the notice negatived the truth of the libels by averring the truth of plaintiff's averments in the declaration; and *second*, that the notice was too vague to identify the facts intended to be relied on.

Upon the first point we think the criticism is over nice. No one can doubt that the purpose of the notice was to justify the defendant. It is manifest that the allegations which defendant meant to justify were the allegations in the libels complained of, and not the plaintiff's own averments in pleading.

Upon the second point the case is governed by *Cresinger v. Reed*, 25 Mich., 450. It was there held that under our present statutes such a general and sweeping notice is good. Under the old system, as there shown, specific averments were necessary and the precise acts claimed to have justified the libel were required to appear. It was competent in libel and slander cases to deviate from the ordinary rule and justify a part only of the charges, leaving the rest to be dealt with as not justified. As remarked by Keating, J. in *Jones v. Bewicke*, L. R. 5 C. B., 32, the propriety of a change in the old practice may

be doubted. But it has been made in England as well as here, and one reason in its favor is that it avoids the danger of losing a good defense by the great technicality that was at one time applied to pleas of justification in cases of defamation. See *Gourley v. Plimsoll*, L. R. 8 C. B., 362.

The objections to this general notice are entirely obviated by the practice which is held to prevail in accordance with the two cases just cited, of compelling a defendant, if requested, to serve particulars of his justification. In this way the plaintiff can avoid being surprised on the trial, and can prepare for the defense to be urged against him.

But it is equally clear that where, instead of giving particulars, a defendant puts in a sweeping universal justification, he assumes the task of showing one precisely proving the truth of the libellous statements as charged. This was held in *Whittemore v. Weiss*, 33 Mich., 348. Unless the notice enables plaintiff to know what the proof is meant to cover, he cannot be expected to meet it.

There was no evidence introduced to show any charge on which Bailey had been actually indicted for malversation in office as a justice of the peace. An attempt was made and permitted to show it by a prosecution and conviction before a justice of the peace, afterwards during the pendency of this suit affirmed at the circuit, of not paying over an assault and battery fine collected by him in his official character as justice of the peace. He was sentenced for this misdemeanor to pay a penalty of fifty dollars.

A prosecution before a justice is not in a technical sense an indictment, but it serves a similar purpose. Grand juries are seldom summoned now, and very few cases are tried at the circuit on indictment. Informations have generally superseded the old method. Yet we use the term "indictment" in ordinary conversation and often in judicial opinions to express any criminal prose-

cution. The burden of this charge was that Bailey had been prosecuted for malfeasance, and we do not think there was any substantial variance between the charge and proof. The popular sense was made out by showing the prosecution for misconduct.

We do not think an allegation of stealing whiskey fines was met by proof of not paying over a fine for an assault. There may be no difference in the legal or moral quality of the acts, but there is a difference in their identity; and a plaintiff should be informed what charges in justification he is expected to meet.

The court also left the charge concerning the Beecher business and plaintiff's loss of office to the jury as one which they might not regard as involving a charge of adultery, and instructed them if it did not, then plaintiff could not recover without proof of special damage.

There was no proof offered to justify this allegation. It was set forth in the declaration as intended to charge adultery, and the justificatory notice did not except it. Moreover, inasmuch as courts have no right to be ignorant of the meaning of current phrases which everybody else understands, it can hardly be seriously urged that such a charge, coupled with an averment that it lost a minister his situation, and backed with a justification, should be assumed without some explanation to be capable of an innocent meaning.

Defendant was bound to show a loss of position at Grass Lake upon some charge of immoral conduct affecting the plaintiff's clerical character in order to justify this charge.

We think also that the term "pettifogging shyster" needed no definition by witnesses before the jury. The combination of epithets every lawyer and citizen knows belongs to none but unscrupulous practitioners who disgrace their profession by doing mean work, and resort to sharp practice to do it. The defendant introduced proof that such was the general reputation of plaintiff, and we think this was a sufficient mode of proof, which

upon this charge made out a full justification unless contradicted.

We do not think the defendant could enter upon proof concerning the truth of the libels published after suit was commenced. Neither, on the other hand, do we see what the plaintiff's affidavit to obtain certiorari in the criminal case had to do with the truth of the facts, so as to authorize him to use it.

It was not error to give the defendants full liberty to show upon what grounds they based their information in publishing the libels.

The public are interested in knowing the character of candidates for Congress; and while no one can lawfully destroy the reputation of a candidate by falsehood, yet if an honest mistake is made in an honest attempt to enlighten the public, it must reduce the damages to a minimum if the fault itself is not serious, and there should be no unreasonable responsibility where there is no actual malice.

The fact that Bailey had been convicted of embezzlement of any kind of fine collected by him might, with no more exaggeration than is common in spreading rumors, develop into just such reports as were shown in this case; and if defendant heard them and honestly believed them, it would be unjust not to receive such evidence as bearing very strongly indeed upon lack of wrong intent. Though not a technical justification, it is difficult to see how such statements damaged plaintiff any more than a precisely accurate statement would have done.

We think that the record contains some errors, and we cannot determine as matter of law that no damages would have been given in any event.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.