WILLIAM W. WHEATON v. LUTHER BEECHER.

*Libel and slander—Privileged publications—Candidate for office.*

1. The language imputed to the defendant, used with the intent and purpose charged in the declaration, must be regarded as libelous upon its face.
2. When a man in this country becomes a candidate for an office, elective or appointive, his character for honesty and intergity, and his qualifications and fitness for the position, are put before the people, and the publication of the *truth* in regard to such candidate is not libelous, but the publication of *falsehood* concerning him is wrong, and deserves to be punished.

Error to superior court of Detroit. (Chipman, J.) Argued April 21, 1887. Decided June 16, 1887.

Case, for libel. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*E. H. Sellers* (*Edwin F. Conely*, of counsel), for appellant.

*John Atkinson*, for defendant.

SHERWOOD, J. The action in this case is for libel. The libel originated in an interview had between the defendant and Charles F. May, one of the reporters of the Detroit Evening News at that time, and in its employ, and in which it is averred by the plaintiff that the defendant made statements seriously reflecting upon the good character of the plaintiff, and imputed to him dishonesty, corruption, and general moral delinquency, such as to make him unfit for the position to which he aspired, and for which he was very generally recommended by most of the prominent business and professional men of the city of Detroit, viz., the office of controller of said city,—an office to which the mayor makes the nomination of the person he desires to have discharge its

duties, and the council of the city has the power of confirming or rejecting him.

It is averred that Mr. Wheaton was a man of good character, and had been in public life for more than 20 years, was well known in Detroit and throughout the State, and was highly esteemed by all good people.

The declaration further alleges that the appointment of the plaintiff to the office of controller was then pending before the mayor and the people of Detroit; that the office was one of trust, confidence, and profit, and, in the discharge of its duties, required a person of honesty and integrity, and one who had the respect and confidence of the people, and these the plaintiff had, and that defendant knew it; and that through feelings of malice, hostility, and revenge, and to defeat him in his candidacy, and injure the good name and fame of the plaintiff, and to injure his feelings, his character for honesty and integrity, the defendant is charged with composing and causing to be published the false, malicious, and defamatory libel complained of, published in the Evening News.

The plaintiff further claims that the libel injured him in the respects intended, and brought him into public scandal and disgrace among the good citizens of Detroit, the county and the State, and otherwise injured him, to his damage $25,000.

Defendant pleaded the general issue, and gave the following notice thereunder:

"Please take notice that the defendant, under the general issue above pleaded, will give evidence, and insist upon as a defense to said action:

" 1. That the words set forth in plaintiff's declaration, as alleged to have been composed and published by said defendant, were privileged communications; defendant at the time of the alleged publication being a citizen of the city of Detroit, Michigan, and a large property owner and tax-payer in said city of Detroit, and interested in the appointment of the public officers of said city as affecting his private interests as well as the public good.

"2. That the said alleged libel was a privileged communication."

No justification of the libel was pleaded by the defendant. The cause was tried before Judge Chipman in the superior court of Detroit, before a jury; and before the parties closed their testimony the case was taken from the jury, and the court directed a verdict for the defendant. The plaintiff brings error.

I do not think the action of the learned judge in this case can be sustained. At the time of the publication of the matters alleged to be libelous, Mr. Wheaton was a very prominent candidate for the appointment of controller of the city, and had been favorably known to the people of the city and the State for more than 20 years, having held during that period high political and official positions, among which was that of mayor of Detroit, and had been prominent as a business man of that city and in other parts of the State, and was then being very strongly supported by all classes in Detroit for the position he desired. There can be no question, I apprehend, but that the language imputed to Mr. Beecher, used with the intent and purpose charged in the declaration, was libelous, and must be regarded so upon its face.[1] Townsh. Sland. & Lib. §§ 176–177a, and authorities cited; *Evening News v. Tryon*, 42 Mich. 549.

---

[1] The language, as set forth in the declaration, is as follows:

"I [the interlocutor meaning] see your [the defendant meaning] old friend, W. W. Wheaton [the plaintiff meaning], is going to be controller [the city controller of the city of Detroit meaning.]

"Yes, and I [the defendant meaning] shouldn't wonder if the city [the city of Detroit meaning] has [thereby meaning that the city of Detroit would have] the same experience with him [the plaintiff meaning] that England [the Kingdom of Great Britain, Ireland, etc., meaning] did [had meaning] with Cyprus [meaning the island of Cyprus, in the Mediterranean sea, provisionally acquired by Great Britain about June 4, 1878].

"What was that?

"Why, England thought it secured a great bargain in Cyprus [meaning thereby that the people of Great Britain, and those having the charge and management of their political affairs, believed that the island of Cyprus was a valuable and desirable acquisition and addition to the jurisdiction of Great Britain], but it turned out [meaning that it was subsequently learned and discovered] that the

The libel in this case was not privileged. It is true the plaintiff was a candidate for appointment to the office of controller of the city of Detroit, but this did not license the defendant, or any other person, to vilify, falsify, and calumniate the character of the plaintiff for honesty, integrity, and morality. There is no doubt that when a man in this country becomes a candidate for an office, elective or appointive, his character for honesty and integrity, and his qualifications and fitness for the position, are put before the people, and are thereby made proper subjects for comment, and that publications of the truth in regard to the candidate are not libelous; and it is equally true that the publication of falsehood against such candidate is wrong, and deserves to be punished.[2]

I think Chief Justice Parsons in *Com. v. Clapp*, 4 Mass. 163, announces the correct doctrine upon this subject, wherein he says, speaking for the court:

"When any man shall consent to be a candidate for a public office conferred by the election of the people, he must be considered as putting his character in issue, so far as it may respect his fitness and qualifications for the office; and publications of the truth on this subject, with the honest intention of informing the people, are not a libel; for it would be unreasonable to conclude that the publication of truths which it is the interest of the people to know should be an offense against their laws. *   *   *   For the same reason, the pub_

island [Cyprus meaning] was a huge grave-yard. The whole surface was covered with dead bodies and bones, to the depth of sixteen feet. They couldn't plow or dig anywhere without turning up this mass of carrion. And so the island [Cyprus meaning] did not prove such a very fine bargain after all [meaning that it was a bad bargain, and that Cyprus was not a valuable or desirable acquisition or addition to British jurisdiction;—meaning thereby that the plaintiff might seem to be a man of honesty and integrity, and a fit and desirable person for city controller, but that, in fact and reality, such was not the case; on the contrary, that the plaintiff's supposed honesty and integrity were but pretense and a sham; that he was a hypocrite; that his real character was bad; that he was dishonest; that he was morally corrupt and rotten; and that business and official contact or relation with him would actually disclose these imputed evil characteristics of the plaintiff]."

[2] See *Bronson v. Bruce*, 59 Mich. 467.

lication of falsehood and calumny against public officers or candidates for public offices is an offense most dangerous to the people, and deserves punishment, because the people may be deceived, and reject the best citizens, to their great injury, and it may be to the loss of their liberties."

The same doctrine is held in New York, Pennsylvania, Ohio, Tennessee, West Virginia, and other states. *Lewis v. Few,* 5 Johns. 1; *Root v. King,* 7 Cow. 613; *Seely v. Blair,* Wright, 358, 683; *Brewer v. Weakley,* 2 Overt. 99; *Barr v. Moore,* 87 Penn. St. 385; *Sweeney v. Baker,* 13 W. Va. 158.

In *Hamilton v. Eno,* 81 N. Y. 116, the court say:

" One may, in good faith, publish the truth concerning a public officer, but, if he states that which is false and aspersive, he is liable therefor, however good his motives."

And to the same effect, so far as it goes, is *Bailey v. Kalamazoo Pub. Co.,* 40 Mich. 257. And the same is true whether the party libeled be an officer, or a candidate for an office, elective or appointive.

There was testimony in the case offered by the plaintiff tending to show that the defendant authorized the publication of the libel, and also some evidence tending to show express malice on the part of defendant in so doing. One of those facts the defendant contested by testimony, and the other he undertook to mitigate the effect of. The position of the parties and of the case, when the taking of testimony was arrested by the court, presented issues upon which the court could not legally pass, and it was error to take them from the jury. There is no occasion to consider the case further upon this record.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.