Buckstaff vs. Viall.

---

BUCKSTAFF, Respondent, vs. VIALL, Appellant.

*December 12, 1892 — January 10, 1893.*

*Libel: Public officer: Privileged communications.*

1. A newspaper article referring to a state senator named Buckstaff as "Bucksniff," is libelous as suggesting the contemptible character Pecksniff.

2. The phrases, in such an article, "beautiful senatorial God" and "look with thy mighty right eye alone," explained by a *colloquium* as being intended to ridicule a deformity of plaintiff caused by a partial paralysis of one side of his face and body, are libelous.

Buckstaff vs. Viall.

3. A newspaper article which, by the use of ironical and sarcastic appellations, indicating scorn and contempt, is calculated to injure a person holding office, both as a citizen and an officer, by bringing him into shame, disgrace, hatred, scorn, ridicule, and contempt, is libelous.

4. Gibes, taunts, and contemptuous and insulting phrases, addressing and alluding to a public officer, independent of and distinct from any reasonable comments upon his personal or official derelictions of duty, are not privileged.

APPEAL from the Circuit Court for *Winnebago* County. Action for libel. The facts are stated in the opinion.

For the appellant there was a brief by *Felker, Stewart & Felker,* and oral argument by *F. C. Stewart.* To the point that the article was a privileged communication, they cited Odgers, Libel, 42; *Wason v. Walter,* L. R. 4 Q. B. 93; *Foster v. Scripps,* 39 Mich. 376; Folkard's Starkie, Slander & L. secs. 269–270; Newell, Defamation, S. & L. 576, sec. 15.

For the respondent there was a brief by *F. W. Houghton,* attorney, and *Gabe Bouck,* of counsel, and oral argument by *Mr. Bouck.*

ORTON, J. The demurrer to the second count of the complaint, on the ground that it did not state a cause of action, was overruled, and the defendant has appealed from said order. The action is for libel. The complaint substantially sets forth the following libelous matter:

The plaintiff was a resident of the city of Oshkosh, Winnebago county, in this state, and a state senator of the nineteenth senatorial district, comprising a large portion of said county, at the date hereinafter stated. The defendant was at the same time doing business in said city as a publisher, under the name of E. W. Viall & Co., and the sole owner and publisher of the Oshkosh Times, a daily newspaper of wide circulation, and published in said city. The defendant, on the 19th day of March, 1889, maliciously published in said newspaper an editorial article containing

the following false and defamatory matter concerning the
plaintiff, to wit: "*A Prayer to Bucksniff* [meaning the
plaintiff]. It hath ever been the custom, from time im-
memorial, to appease the wrath or obtain the favor of the
gods through the medium of prayer. Oshkosh is now in a
situation where a resort to this means of grace is advis-
able. Through her representatives in council she has asked
the passage of certain amendments of her charter. These
can be obtained through divine favor of Senator Bucksniff
[meaning the plaintiff], the legislative god of Winnebago
county. His majesty Bucksniff [meaning the plaintiff],
under the pretense of consulting some of his friends, who
are a number of well-known little political gods of Osh-
kosh, intends to defeat these amendments by procrastina-
tion and delay until it is too late for their adoption by the
legislature in time for the spring election. As the means
of obtaining the favor of this wonderful legislative god,
his majesty Bucksniff [meaning the plaintiff], the TIMES rec-
ommends that the citizens of Oshkosh offer up to him the
following prayer: ' We are sensible, O, dearly-beloved
Bucksniff [meaning the plaintiff], of thy great wisdom and
power, and humbly beseech thee that thou wilt favor us
with certain amendments to our city charter. Know thou,
O, divine senator [meaning the plaintiff], compared with
whom all other senators are merely ciphers who draw per
diem and mileage from the state [meaning the opposite],
wilt thou make and ordain certain great and wise laws,'
etc. 'Know, thou, also, mighty, eloquent, and *beautiful*
senatorial God,' etc. [meaning this plaintiff, and intending
by irony and sarcasm in the words used to sneer at and
ridicule the deformity of the plaintiff, caused by a partial
paralysis on one side of his face and body]. ' While it is
within thy mighty power to defeat the will of the people
of Oshkosh, forget, O, Mighty Being [meaning the plaint-
iff], the advice of thy friends, the little Republican ward

gods, and look with thy mighty *right eye* alone,' etc. [meaning the plaintiff, and again, in an ironical sense, alluding to the partial paralysis of this plaintiff]. 'And, in conclusion, thou divine South Side dictator [meaning the plaintiff], we implore that thou wilt reconsider thy determination to defeat the laws,' etc. . . . There will be one chance in fifty, at least, of his Third Ward Omnipotence [meaning the plaintiff] surrendering his own wishes and following those of the people." This publication greatly injured the plaintiff in his office as senator, and in his reputation, and brought him into public ridicule and contempt. The plaintiff demands $30,000 and costs.

The words more especially libelous are: "Prayer to Bucksniff;" "Divine favor of Senator Bucksniff;" "The legislative god of Winnebago county;" "His majesty Bucksniff;" "We are sensible, O, dearly-beloved Bucksniff, of thy great wisdom and power, and humbly beseech thee;" "Know thou, O, divine senator, compared with whom all other senators are merely ciphers;" "Know thou, also, mighty, eloquent, and *beautiful* senatorial God;" "Forget, O, Mighty Being, the advice of thy friends, the little Republican ward gods, and look with thy mighty right eye alone to the good of the city;" "Thou divine South Side dictator, we implore," etc.; "Third Ward Omnipotence."

The grounds of the demurrer are: (1) That the article is not libelous; (2) that it is privileged; (3) that the innuendoes cannot make the matter libelous which is otherwise not so.

The complaint charges that the defendant published the article maliciously, and of and concerning the plaintiff. It begins in the form and heading of a prayer to *Bucksniff* (meaning the plaintiff).

1. The name itself is libelous. It is a nickname which is a name of reproach, and an opprobrious appellation, and is in the similitude of "Pecksniff," one of the familiar and

most contemptible characters in Dickens, and readily suggests that name to the reader, and it is repeated several times. It is used to excite ridicule and contemptuous derision. He is called "*Senator* Bucksniff" to more clearly show it was meant for the plaintiff. The article is of and concerning the plaintiff as senator of Winnebago county. He is also called "His majesty Bucksniff," "A legislative God," "Dearly-beloved Bucksniff," "Divine senator," "Mighty Being," "Omnipotence." These appellations may mean that he is vain, self-conceited, pompous, self-aggrandizing, and assumes a despotic and god-like character above his constituents and all other men, and has to be prayed to and beseeched for legislative favors; or it may be, and probably is, ironical, which is a kind of ridicule which expresses a fault and apparent assent, but meaning the opposite,— that is, that he is not the greatest, but the smallest and meanest; or sarcastical or satirical, indicating scorn, contempt, a taunt or a gibe. These very words and phrases are *per se* libelous. "That which is written or printed and published, calculated to injure the character of another, by bringing him into ridicule or contempt," or "tends to prejudice him in his office," is libelous *per se,* by all the authorities. The address to the plaintiff as "O, dearly-beloved Bucksniff," is ironical and contemptuous, meaning the opposite,— hated, despised Bucksniff. The whole article, in its general scope and meaning, is calculated to injure the plaintiff in his reputation and character, both as a citizen and a senator, by bringing him into shame, disgrace, hatred, scorn, ridicule, and contempt, and is grossly libelous. *Cary v. Allen,* 39 Wis. 483; *Cottrill v. Cramer,* 43 Wis. 242; *Solverson v. Peterson,* 64 Wis. 198; *Bradley v. Cramer,* 59 Wis. 309; *Lansing v. Carpenter,* 9 Wis. 541; *Spiering v. Andrae,* 45 Wis. 330.

The phrases, "*beautiful* senatorial God," "And look with thy mighty right eye alone," are explained by a *colloquium,*

not by an innuendo, as claimed by the learned counsel of the appellant. "An innuendo is to define the defamatory meaning which the plaintiff sets on the words, and show how they came to have that defamatory meaning, and how they relate to the plaintiff." A colloquium is the statement of extraneous facts and circumstances necessary to fully understand the defendant's words. The complaint states that these words were spoken "to sneer at and ridicule the deformity of the plaintiff, caused by a partial paralysis of one side of his face and body." The learned counsel of the appellant contends that they have no such meaning. But that is a question for the jury, on the proof of the facts stated. It is difficult to understand what these phrases do mean, if they have not reference to some bodily deformity that gives the plaintiff's face an ugly or disagreeable appearance. The word "beautiful" is used ironically, to mean the opposite most clearly, and the " mighty right eye alone " would indicate that the other eye was closed or injured. It seems very probable that the explanation in the colloquium is the correct one. With this explanation, the phrases are clearly libelous, as exciting ridicule, contumely, and shame.

2. Are the above words and phrases privileged? A privileged communication is a fair comment by a public journal upon a matter of public interest. Starkie, Sland. & L. (Ed. 1877), 332. If this article were a fair or reasonable comment upon the plaintiff's official conduct as state senator, or upon his neglect of his legislative duties, and that were all, it might be privileged. The only part of the article that can be called a comment upon his legislative conduct as state senator is as follows: " His majesty Bucksniff, under the pretense," etc., "intends to defeat these amendments [of the Oshkosh city charter] by procrastination and delay until it is too late for their adoption by the legislature in time for the spring election." This part of the ar-

ticle, standing alone, would scarcely be libelous; but if so, it might be also privileged. But those parts of the article, and the most of it, which we have considered above, have no necessary connection with this unobjectionable comment. They are not comments, in any sense, upon the plaintiff's legislative course of action. They are simply gibes, taunts, and contemptuous and insulting phrases; and most of them in personally addressing and alluding to the plaintiff, and independent of and distinct from any reasonable comments upon his personal or official derelictions of duty, and are not justified or excused by them. They are clearly not privileged by any principle of law.

3. The libelous matter of the article is not enlarged by the innuendoes. The office and use of an innuendo are stated above, and are in the complaint. It is used mostly, and properly, to show the person to whom the libelous matter relates. The second count of the complaint clearly states a good cause of action, and the demurrer was properly overruled.

*By the Court.*— The order of the circuit court is affirmed, and the cause remanded for further proceedings at law.