ORBAND v. KALAMAZOO TELEGRAPH CO.

1. Libel and Slander — Ridicule Libelous Per Se — Newspapers—Demurrer.

On demurrer, plaintiff's declaration charging that defendant, with the purpose of bringing plaintiff into ridicule and contempt, published an article stating that plaintiff was not going to marry a person named, who was a notorious drunkard and had been frequently imprisoned in jail therefor, that plaintiff stated she was not going to marry such person, that rumors of such engagement existed and were set at rest by plaintiff, all tending to bring plaintiff into ridicule and contempt, further charging that an alleged retraction, of similar import, was later published by defendant, as set out in full in the pleading, for the same purpose, and that such statements were false, that no rumor of plaintiff's engagement existed, constituted a sufficient allegation of plaintiff's cause of action for libel.

2. Same.

Articles tending to bring a person into shame, contempt, and derision in the community are libelous *per se.*

3. Same—Declaration—Innuendo.

Whether such articles would bear the construction placed upon them, and whether the innuendoes, colloquium, and inducement were true, were questions for the jury.

Certiorari to Kalamazoo; Knappen, J. Submitted April 2, 1912. (Docket No. 10 ) Decided May 31, 1912.

Case by Caroline Orband against the Kalamazoo Telegraph Company for libel. An order overruling a demurrer to plaintiff's declaration is reviewed by defendant on writ of error. Affirmed.

*Osborn & Mills*, for appellant.

*D. O. French*, for appellee.

STONE, J. This is an action on the case for damages for the publication by defendant of an alleged libel. The declaration contains four counts. We here set forth the substance of the first two counts.

After the preliminary statement, by way of inducement, it is alleged that the defendant did wickedly and maliciously compose and publish of and concerning the plaintiff the following libel, with prominent headlines, as follows:

(1) "'Caroline [plaintiff meaning] Says She Isn't Going to Marry Pete [meaning Peter Mulder, hereinafter mentioned]. Sets at Rest Rumor Which had Gained Circulation; All Because Dogs Can't Ride on Street Car.' Following which headlines, and being a part of said wicked and malicious libel, the defendant did publish and cause to be published the following, to wit:

"'The engagement [meaning an engagement or agreement to marry] of Miss Caroline Orband [plaintiff meaning] and Peter Mulder of this city will not be announced and they will not be married in the early fall according to a statement made by Miss Orband [plaintiff meaning] this afternoon.'

"'For the past few days rumor of the approaching announcement [meaning the announcement of an engagement or agreement to marry of plaintiff and the said Peter Mulder] have been heard in various places and much interest has been shown in the event In an effort to confirm the rumor [meaning a rumor of said engagement] a representative of the Evening Telegraph visited Miss Orband [plaintiff meaning] in her kitchen this afternoon and asked her concerning the rumor [meaning said rumor of said engagement].'

" ' I suppose they have seen us out walking together and have thought from that that we [plaintiff and said Mulder meaning] were going to be married.  You are young and probably don't know that for years the newspapers and everybody else have picked me [plaintiff meaning] out and slurred me [plaintiff meaning] in every way they could.  But you can tell them I [plaintiff meaning] am not going to be married.  Pete [said Mulder meaning] has been doing some work for me [plaintiff meaning] on Lincoln avenue.  I [plaintiff meaning] own two houses over there and we [plaintiff and said Mulder meaning] had to take the wheelbarrow and some things over there and I [plaintiff meaning] had to go along.  I [plaintiff meaning] could not get a car for the dogs were with me [plaintiff meaning] and they won't let dogs on the cars, you understand, so I [plaintiff meaning] walked over there with Pete [said Mulder meaning].  You can tell 'em I [plaintiff meaning] ain't going to marry anybody. I [plaintiff meaning] want to go in and take a nap and then go out and pick my cherries, so you can go along and tell them what I said and that they can go along their own way with their own noses.'  [Meaning the same to be a quotation of words spoken by the plaintiff, thereby meaning to subject to and bring the plaintiff into public ridicule, notoriety, disgrace, and humiliation, and to cause her great suffering, pain, mental anguish, and humiliation.]

"And the plaintiff avers that no engagement or agreement to marry existed, or ever had existed, between herself and the said Peter Mulder; that no rumor of any such engagement existed or was in circulation at or before the time of said publication; and that said alleged quotation is not a correct or true quotation of words spoken by plaintiff.  And the plaintiff further avers that for many years the said Peter Mulder has been and was well known and notorious in said city of Kalamazoo for drunkenness and dissipation, and a disreputable, uncouth degenerate and unclean person; that he had been many times arrested and imprisoned in the jails and prisons of said county and State for such drunkenness; that he had been many times convicted in the courts of said city and county of Kalamazoo for such drunkenness, and had also been convicted in the courts of said city and county of being a common drunkard, all of which was well known to said defendant at the time of said publication.

(2) "And also for that, whereas the said defendant, further wickedly and maliciously intending to injure the plaintiff in her good name, fame, and credit, and to bring her into public ridicule, scandal and disgrace with and amongst all her neighbors and other good and worthy citizens, heretofore, to wit, at the city of Kalamazoo, in said county, in a certain newspaper published and circulated by the defendant in said city and county of Kalamazoo and State of Michigan, called the Kalamazoo Evening Telegraph, wickedly and maliciously did compose and publish, and cause to be composed and published, of and concerning the plaintiff, a certain other false, scandalous, malicious, and defamatory libel, containing and being a part thereof, large, prominent, glaring, and malicious headlines, the more particularly to call attention of the readers of said newspaper to said false, scandalous, malicious and defamatory libel of and concerning the plaintiff, which headlines are in words as follows, to wit: (The headlines in the first count of this declaration set forth). Following which headlines, and being a part of said wicked and malicious libel, the said defendant did publish, and cause to be published, in said newspaper, the following, to wit: (The article and matter following said headlines as alleged and set forth in the first count of this declaration). And further wickedly and maliciously intending to injure the said plaintiff in her good name, fame and credit, and to bring her further into public ridicule, scandal and disgrace with and amongst all her neighbors and other good and worthy citizens, and to aggravate the libel and enhance and increase the pain and suffering of the plaintiff, heretofore, to wit, on the 29th day of July, 1909, to wit, at the city of Kalamazoo, in said county, in a certain newspaper published and circulated by the defendant, in said city and county of Kalamazoo, and State of Michigan, called the Kalamazoo Evening Telegraph, wickedly and maliciously did compose and publish, and cause to be composed and published, of and concerning the plaintiff, a certain other false, scandalous, malicious, and defamatory libel of and concerning the plaintiff, which headlines are in words as follows, to wit:

" 'IN WHICH WE APOLOGIZE TO MISS ORBAND.

" 'Telegraph's Sorry for Causing Well-Known Kalamazoo Lady any Embarrassment or Mental Distress.'

"Following which headlines, and being a part of said

wicked and malicious libel, the defendant did publish, and cause to be published, in said newspaper, the following, to wit:

"'The Telegraph is in receipt of a registered letter from Attorney D. O. French, representing Miss Caroline Orband [plaintiff meaning], and setting forth that Miss Orband [plaintiff meaning] feels aggrieved over an article published July 21st, in which Miss Orband [plaintiff meaning] was quoted as denying that she [plaintiff meaning] was engaged to marry Peter Mulder.

"'The Telegraph is sincerely sorry if Miss Orband [plaintiff meaning] has been caused any mental suffering by the article in question, which was published at her [plaintiff meaning] request when the report of her [plaintiff meaning] engagement then in circulation was called to her [plaintiff meaning] attention. The Telegraph begs to assure Miss Orband [plaintiff meaning] that it entertains the highest respect for her [plaintiff meaning] and would not willingly have injured that estimable lady's [plaintiff meaning] feelings or been the part of the public.

"'The Telegraph feels, however, that Mr. French is in grave error when he mentions Miss Orband's [plaintiff meaning] mental distress is due to the "well known character and reputation of Peter Mulder." Mr. Mulder [said Peter Mulder meaning] has conducted himself for the past two years in a manner to earn the respect and honor of his fellow citizens and is a sober, industrious gentleman. Such an attack upon his character cannot be allowed to pass unnoticed.'

"Thereby meaning and intending to subject and bring to the plaintiff further public ridicule, notoriety, disgrace, and humiliation, and to cause her great suffering, mental anguish, and humiliation.

"And the plaintiff avers that no engagement or agreement to marry existed, or ever had existed, between herself and said Peter Mulder; that no rumor of any such engagement existed or was in circulation at the time of said several publications; that the plaintiff did not request the publication of the article and matter set forth in the first count of this declaration, as having been published by the defendant, and requested no publication to be made in said newspaper; and that said alleged quotation in said matter first published by the defendant is not a true and correct quotation of words spoken by plaintiff.

"And the plaintiff further avers that for many years the said Peter Mulder had been and was well known and notorious in said city of Kalamazoo for drunkenness and dissipation, and as a disreputable, uncouth degenerate and unclean person; that he had been many times arrested and imprisoned in the prisons of said city, county, and State, for such drunkenness; that he had been many times convicted in the courts of said city and county of Kalamazoo for such drunkenness, and had also been convicted in the courts of said city and county of being a common drunkard, and had been divorced by his wife, Elizabeth Mulder, in the circuit court for the said county, in chancery, viz., to wit, 17th day of September, 1904, upon the grounds of extreme cruelty, habitual drunkenness, and failure to support, all of which was well known to the defendant at the time of said several publications."

To the declaration, the defendant demurred upon the following grounds:

*First.* Because no cause of action is stated, or alleged as against the defendant in any of the counts.

*Second.* For the reason that the matters which are alleged in the declaration and the several counts thereof to be libels as against the plaintiff are not, in law, libels of her.

*Third.* For the reason that the matters alleged to be libelous, and a libel of plaintiff, standing alone and unaccompanied by the innuendoes and explanations alleged and attempted to be made in and by the declaration, and the several counts thereof, are not libelous, or a libel of plaintiff.

*Fourth.* For the reason that no special damages are alleged or averred in the declaration, or in any count thereof.

*Fifth.* For the reason that nothing is alleged in the declaration, or in any count thereof, which is libelous, or a libel of plaintiff *per se;* and no special damages or injury are alleged to have been sustained by her.

After the filing of the demurrer, the plaintiff's declaration was amended by adding to each count of the same the following:

" By reason of the publishing of said false, scandalous, malicious, and defamatory libel, and by means of the

committing of which said several grievances by the said defendant, as aforesaid, she, the said plaintiff, has been and is greatly injured in her good name, credit, and reputation, and brought into public scandal, infamy, disgrace, public ridicule, and humiliation, and by reason thereof the said plaintiff has been caused and has suffered great mental suffering, anguish, and humiliation, all to her damage in the sum of $20,000."

The demurrer was permitted to stand, as made, to said declaration as amended.   Upon the argument of the demurrer, it was overruled by the court, and a writ of certiorari was allowed by this court to review that decision, in pursuance of the act of 1905 (Act No. 310, Pub. Acts 1905).

It is the claim of the appellant that the publication is not a libel *per se;* and, there being no claim of special damages, the declaration does not state a cause of action.

It is the settled law of this State that any printed publication, the natural result of which is to bring ridicule or contempt upon the plaintiff, is, if untrue, libelous.   A leading case upon this subject, and one where the publication in its character was quite similar to the one here set forth, is *Hatt* v. *Evening News Ass'n,* 94 Mich. 114 (53 N. W. 952), where the earlier case of *Tryon* v. *Evening News Ass'n,* 39 Mich. 636, is cited.   See, also, *Smith* v. *Smith,* 73 Mich. 445 (41 N. W. 499, 3 L. R. A. 52, 16 Am. St. Rep. 594), where the plaintiff was charged with deserting her husband in his sickness.   It was held that the matter published was libelous *per se,* because, if the charge was true, the plaintiff was guilty of conduct deserving the contempt of all right-minded people.

In the instant case, appellant's counsel claim that the publication at most " amounted to no more than harmless pleasantry."   We think that this position is untenable. To connect the name of plaintiff with that of an alleged drunken degenerate, in the most sacred relation in life, tended to hold the plaintiff up to ridicule and scorn, and would tend to damage her in her social relations and

standing. Both articles, in their general scope and apparent meaning, were well calculated to injure the plaintiff by bringing her into shame, ridicule, contempt, and derision. No good purpose can be served by such publications; and the plaintiff was entitled to her right of exemption from such notoriety, and to the seclusion and privacy which are the rights of every private citizen. She is here held out to the public as a shallow-minded person, and as being the central figure of what is alleged to be an absolutely fictitious and absurd story. The articles naturally tend to her disparagement, and are well designed and calculated to hold her up to ridicule by making her the prominent figure in an alleged purely fictitious and absurd narrative. That publications of this nature are libelous *per se* is well settled by the great weight of authority. *Allen* v. *News Publishing Co.*, 81 Wis. 120 (50 N. W. 1093); *Buckstaff* v. *Viall*, 84 Wis. 129 (54 N. W. 111); *Kay* v. *Jansen*, 87 Wis. 118 (58 N. W. 245); *Morse* v. *Printing Co.*, 124 Iowa, 707 (100 N. W. 867); *McFadden* v. *Journal Ass'n*, 28 App. Div. (N. Y.) 508, 51 N. Y. Supp. 275; *Kirman* v. *Publishing Ass'n*, 99 App. Div. (N. Y.) 367, 91 N. Y. Supp. 193; 25 Cyc. pp. 253–263, and cases cited; 18 Am. & Eng. Enc. Law (2d Ed.), p. 909 *et seq.* Many more authorities might be cited to the same effect.

The defendant, by demurring, admits the publications. Whether they will bear the construction placed upon them by the plaintiff is for the jury. The truth of the innuendoes, the colloquium, and of the inducement or extrinsic matter, is also for the jury. Newell on Slander and Libel (2d Ed.), p. 628; *Buckstaff* v. *Viall, supra.*

The demurrer was properly overruled, and the order of the circuit court is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.