## James Ritchie v. Peter Stenius.

*Libel and slander—Malice—Provocation—Mitigation of damages—Evidence—Cross-examination of party to action.*

1. In an action for slander, whatever may have occurred at or near the time as a provocation for the speaking of the words may be given in evidence in mitigation of damages.

2. Malice is the *gist* of an action for slander, and the speaking of *actionable* words is evidence of malice.

3. There can be no doubt that calling another a thief, a rogue, and a robber, if unexplained, would be actionable, but the circumstances surrounding the speaking of the words may be given in evidence to rebut the presumption of malice.

4. The words "thief, rogue, and robber," are not actionable, unless the party using them intended to impute crime, which the law will presume if not explained, and he may show that the words were spoken in the heat of passion, and under strong provocation from the conduct of the adverse party at the time, as evidence of want of deliberation and malice, and this is a question for the jury under proper instructions.

5. The jury have a right to be informed of the character and antecedents of the witness, whose testimony they are called upon to weigh, and when a party is sworn in his own behalf he stands to the case like any other witness, and is subject to the same rules of cross-examination as any other witness.

Error to Wayne. (Look, J.) Argued January 17, 1889. Decided February 1, 1889.

Case for slander. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*B. T. Prentis,* for appellant.

*Atkinson, Carpenter & Brooke (R. E. Frazer,* of counsel), for defendant.

Long, J. Plaintiff sued defendant for verbal slander, charging him with having on May 25, 1886, on Croghan

street, in the city of Detroit, in the presence of divers good citizens, said to plaintiff, in the presence of said citizens: "Ritchie, you are a thief and a rogue and a robber, and I can prove it." Defendant pleaded the general issue. Defendant, on the trial before a jury, had verdict and judgment in the Wayne circuit court. Plaintiff brings error. Twenty errors are assigned, but in disposing of the case we need notice but few of them. It appears that plaintiff keeps a saloon on Croghan street, Detroit. Defendant is a basket-maker, and resides in the same block in which plaintiff's saloon is situate. On the afternoon of May 25, 1886, a boy named John Cody, formerly in defendant's employ, had a quarrel with plaintiff in his saloon, and threw an iron through a mirror behind plaintiff's bar, claimed to be worth from $15 to $20. After throwing the iron, Cody ran from the saloon, and took refuge in defendant's house, to which place he was pursued by plaintiff. Defendant was not at home at the time; but his wife, being present, testified on the trial that, after Johnnie Cody came in, the plaintiff came in the house, caught him, and threw him down by the sink, and says:

"'Mrs. Stenius, never mind me, I am Mr. Ritchie. Mr. Stenius knows me.' I said I did not know him. He said Johnnie had broken a mirror in his saloon. 'I am going to take him.' Johnnie ran into the dining-room, and locked himself in. Ritchie bumped on the knob on the door, and told him to open it, and he said he would not. I said, 'Don't break down the door.' He said, 'I will break down the door, or arrest you for harboring the boy.' I was scared, and said, 'Mr. Ritchie, walk out of my house.' He says, 'All right; I will go and fetch the patrol, and take both of you.' I told Johnnie to open the door, which he did, and Mr. Ritchie rushed in and took him out. In the struggle Mr. Ritchie bumped me against the sink. I was badly frightened. About 5 or 10 minutes after, Mr. Stenius came in. I was laying down very much frightened. I

felt sick. I told him Mr. Ritchie and Johnnie Cody had been there and frightened me. That was all I told him. He walked right out. He said he was going to see what was the matter."

The defendant was sworn in his own behalf, and testified that when he came home he noticed something was the matter with his wife, and asked her what it was; that she was very nervous and frightened, and said a man had been there and nearly frightened the life out of her; that she said it was Ritchie; that he was excited, and went out and over to Ritchie's and told him,—

"'I understand you have been over to my house, and nearly scared the life out of my wife.' He says, 'You are a liar.' I says, 'I am told, and I came to find out.' He says, 'You are a damn liar.' I says, 'I am not.' He says, 'Do you want to buy anything?' I said, 'No; I came for information, and you have abused me.' Then he ordered me to get out, and put his fist in my face. He followed me out on the walk, and clinched his fist, and said, 'You are an insignificant, low man.' I said, 'I am not as low as you are. Whatever I get I get honestly.' When he abused me I got mad. I shook my fist in Ritchie's face, and he did his in mine, many times."

Defendant claims that this was about the extent of the words used; that he was very much excited, but not so much so but that he remembered what took place.

The plaintiff, being sworn in his own behalf, testified, substantially, that defendant came into his saloon about 6 or 7 o'clock on that day, put his fist in his face, and called him a son of a bitch, a thief, a rogue, and a robber, and said he could prove it; that he put him out, and shut the door, when he again said, "You are a thief, a rogue, and a robber, and I can prove it;" that he talked in a loud voice, and over 30 people heard him. Several witnesses were sworn and examined upon either side of the case; the testimony of some tending to support the

statements of defendant, and some tending to support the statements of plaintiff.

The declaration charges the slanderous words to have been spoken in front of plaintiff's saloon on Croghan street. Some confusion arises in the record in determining what was said in the saloon, and what took place after the parties had reached the street in front of the saloon; some of the witnesses hearing only what took place in front of the saloon, and others hearing the talk in the saloon. The court, however, in its charge, limited, very properly, the case to the words spoken in front of the saloon, and upon this question the testimony is contradictory. The court, among other things, instructed the jury:

"The burden is upon the plaintiff to show, by a preponderance of testimony, that the defendant used the slanderous words charged in the declaration on his part in front of plaintiff's saloon. Unless you find he did so, your verdict must be for the defendant; and if you find that he did use the words charged in the declaration, but that they were the mere outburst of excitement and passion, induced by the conduct and actions of the plaintiff at defendant's house and in plaintiff's saloon, and were not intended to charge the plaintiff with the commission of a crime, and if those who heard them did not understand that they charged the commission of a crime, but were produced by the result of the excitement so produced, your verdict must be for defendant. It must be shown in this connection, gentlemen, that the defendant knew of the acts of the plaintiff which are relied upon in mitigation at the time he used the words charged, or the jury cannot consider them at all."

The main question in this case for consideration arises under this part of the charge of the court. Under the circumstances here stated; is this charge justified? It is evident that the defendant was laboring under a high state of excitement when he left his house to visit the plaintiff's place of business. He found his wife laboring

under great excitement, induced by the plaintiff's conduct there, and in such condition that she was unable to state fully what had occurred; and defendant, learning from her that Ritchie was the cause of it, at once went to get an explanation from him. If the defendant's testimony is believed, the plaintiff, instead of giving any explanation of his conduct in entering defendant's house, and attempting to arrest the boy Cody, and conducting himself boisterously, threatening to arrest the wife of defendant as well as the boy, and to call others to his assistance in so doing, told the defendant, when charged with this conduct, that he was a damned liar, and insultingly asked him if he wanted to buy anything, and, after some altercation between them, put the defendant out of doors. It is not claimed on the part of the plaintiff that, when the defendant came into his saloon, he made any explanation of his conduct in entering defendant's home, or that he offered, or attempted to offer, any such explanation, but at once entered into an altercation with him. Neither does he deny that he pursued the boy Cody into the home of defendant, and took him out from there, though he did not know the wife of defendant, or she know him. It was under these circumstances, and after this provocation, defendant claims, that the words were uttered on Croghan street, if any such words as imputed to him were spoken by him there, which he denies.

The general rule is that, in this form of action, whatever may have occurred at or near the time as a provocation for the speaking of the words may be given in evidence in mitigation of damages. It is said, as a ground of provocation for an attack either upon the person or the character of an individual, whatever took place at the time may be given in evidence by the defendant in mitigation of damages; for the law makes allowances for the infirmities of human nature, and for what is done in

the heat of passion, produced by the improper conduct of the adverse party.     Malice, however, is the *gist* of an action for slander, and the speaking of actionable words is evidence of malice.     There can be no doubt that the calling the plaintiff a thief, a rogue, and a robber, if left unexplained, would be actionable.    The circumstances surrounding the speaking of the words, however, may be given in evidence to rebut the presumption of malice. The words "thief, rogue, and robber" are not actionable, unless the defendant intended to impute crime, which the law will presume if not explained.     Whether these words are actionable or not depends upon whether they are used to charge a criminal offense, or whether they are used in the heat of passion, and without deliberation, as words of vituperation.     That the words were spoken in the heat of passion, and under strong provocation from the conduct of the adverse party at the time, may be shown as evidence of want of deliberation and malice, which is the *gravamen* of this action.     *McKee v. Ingalls,* 4 Scam. 30.     This doctrine is fully sustained in *Pierson v. Steortz,* 1 Morris (Iowa), 136; Townsh. Sland. & Lib. § 414; *Robinson v. Keyser,* 22 N. H. 323.

Under the circumstances here shown, we think it was a question for the jury to determine whether the defendant, if he spoke the words charged, intended to impute a crime to the plaintiff, or that he spoke them in the heat of passion, induced by the conduct of the plaintiff, and without deliberation, not intending to impute a crime. The case was very properly submitted to the jury on that theory of the case.

Error is also assigned upon another portion of the charge of the court, in which the court said:

"Now, in conclusion, as bearing upon the provocation of defendant, I charge you that the plaintiff had no right to arrest the boy in the defendant's house, and that his

entering into defendant's house for that purpose was a trespass on defendant's rights."

In this statement the court was speaking to the jury on the question of mitigation of damages, and that these were questions that might be considered in mitigation. Whether the entry of plaintiff into the house of defendant was lawful or not can matter but little. It was the effect such entry produced on the mind of defendant that was important. He evidently viewed it as a great wrong. He found his wife suffering from it, and attempted to get an explanation, and, instead, got from the plaintiff only additional abuse and insult. The fact of the entry and the conduct of plaintiff only become material as showing that the words were spoken in the heat of passion, and not from deliberation, and as tending to rebut the presumption of malice. We find no error in the charge.

Counsel for plaintiff makes some contention in his brief that the jury were prejudiced by the remarks of counsel for defendant, during the trial, in his offer of testimony. It appears that, upon the cross-examination of the plaintiff, counsel for defendant offered to show by him that the next morning after the mirror was broken the mother of John Cody came to him, and paid him $45 for the mirror, and took a receipt therefor, the plaintiff agreeing that he would not appear and prosecute the boy in the police court; that on the next morning the mother went to the police court, and found the plaintiff there prosecuting the case; that when she made known to Justice Miner the fact of the payment of $45, the justice compelled the plaintiff to refund to her $35 of the money. It was proposed to show this by the cross-examination of the plaintiff. This the court excluded. Plaintiff's counsel contends, however, that the proposition made, and the remarks of counsel thereon, had great weight with the jury, and that plaintiff was prejudiced in his case, even

though the court excluded the testimony. We think, if any error was committed in this, it was in the court excluding the testimony. The plaintiff was being examined as a witness in his own behalf, and upon his cross-examination the counsel for defendant made this offer of proof. The jury had a right to be informed of the character and antecedents of the witness, whose testimony they were called upon to weigh. While it is true the rule does not allow an attack upon character in this class of cases by specific acts, yet, when the party is called as a witness in his own behalf, he stands to the case like any other witness, and subject to the same rules of cross-examination as any other witness, and this was a proper subject of cross-examination. Whatever his answers may have been to these inquiries, the defendant would undoubtedly have been bound by them, but as a matter of cross-examination it was proper.

We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.