## THOMAS ELLIS v. ALVIN H. WHITEHEAD.

*Libel and slander—Evidence—Malice—Meaning of words—Understanding of hearers—Damages—Practice in Supreme Court.*

1. An erroneous ruling sustaining an objection to a question is cured if a full answer is elicited by subsequent questions.

2. An assignment of error based on the erroneous exclusion of testimony will not be noticed where the record fails to show that an exception was taken to the ruling.

3. Where the trial court was not informed of the purpose of a question, an objection to which was sustained, such purpose cannot be urged in the appellate court in support of a claim that the ruling was erroneous.

4. Reiteration and emphasis on the occasion of the slander, though not in the exact words counted on in the declaration, go to the question of malice, and may also be shown as a part of the *res gestæ*, the whole conversation being admissible; citing *Newman v. Stein*, 75 Mich. 402.

5. The business standing of the defendant in a slander suit may be shown to prove the influence his word would have in the community, but the jury should be cautioned against allowing such evidence weight beyond what it deserves, and especially against allowing it to swell the damages on its own account; citing *Brown v. Barnes*, 39 Mich. 211.[1]

6. Where a witness has clearly and explicitly testified to a certain fact, an objection to a question calling for a repetition of the testimony is properly sustained.

7. Slander, like other wrongs, is actionable because injurious, and, while intention may have much to do with the question of damages, it is not necessarily involved in the question of guilt.

8. It is going sufficiently far to say that a person may without liability call another a thief under circumstances which show he does not mean it.

9. In actions for defamation it is immaterial what meaning the speaker intended to convey. He may have spoken without any intention of injuring another's reputation, but if he has in fact done so he must compensate the party. He may

[1] See *Farrand v. Aldrich*, 85 Mich. 600.

have meant one thing, and said another. If so, he is answerable for so inadequately expressing his meaning.

Error to Ingham. (Person, J.) Argued February 2, 1893. Decided March 10, 1893.

Case for slander. Defendant brings error. Affirmed. The facts are stated in the opinion.

*E. C. Chapin* and *S. L. Kilbourne*, for appellant.

*R. A. Montgomery* and *Russell C. Ostrander*, for plaintiff.

HOOKER, C. J. Plaintiff recovered a judgment in an action for slander, from which defendant appealed. The language, as counted upon, is as follows:

"Tom Ellis is a damned, low-lived, thieving, son of a bitch; and I have had a man watching him, and seen him steal, and I believe you know he is a thief."

The undisputed testimony shows that the conversation occurred in the presence of several gentlemen, all but one of whom were partners with plaintiff and defendant in the Lansing Ice Company, hereinafter mentioned. The defendant's accusation appears to have grown out of the fact that plaintiff had taken, and applied to his own use, some ice stored at Town Line lakes, which the defendant claimed the Lansing Ice Company was under contract obligations to deliver to the Cleveland Ice Company.

Philo L. Daniels, the partner of plaintiff in another ice company doing business at Lansing, was called as a witness for the plaintiff, and testified to a conversation including some of the words complained of. On cross-examination he stated that he did not know what transaction the language referred to. The following colloquy occurred:

"*Q.* You say on hearing what he said to Mr. Barnes you

did form some conclusion as to what Whitehead's talk referred to, did you not?

"*A.* No, sir; I don't know that I did.

"*Q.* You have since learned that it referred to some difficulty growing out of the ice business, have you not? (Objected to as immaterial,—what he had since learned about it. Objection sustained. Exception by defendant.)

"*Q.* What did you understand, from the talk between Mr. Whitehead and Barnes, was referred to?

"*A.* I understood it to refer to this ice business.

"*Q.* And to what about the ice business?

"*A.* That I cannot tell you?"

It appears that, while the objection to the first question was sustained, subsequent questions elicited a full answer. Hence, if the ruling was erroneous, it was cured.

The second assignment of error cannot be noticed, as the record fails to show an exception.

The witness Daniels was cross-examined at length in regard to the question whether the conversation was connected with or grew out of the ice business. Seven car-loads of the ice had been shipped from Clare county to plaintiff and Daniels. The examination proceeded as follows:

" *Q.* How long after the shipment of the ice before you learned that what Mr. Whitehead said about Mr. Ellis to you grew out of the ill-feeling over the shipment of that ice, if you did learn it?

" *A.* Why, I never learned that the feeling grew out of that.

" *Q.* I understood you, Mr. Daniels, that you are not aware of the fact that what Mr. Whitehead said in that conversation about Mr. Ellis grew out of a dispute about the management of the ice business?

" *A.* I never knew what it did grow out of.

" *Q.* Did you know of any difficulty between Mr. Whitehead and the members of that company, growing out of the shipment of ice to the firm of Daniels & Ellis? (Objected to as immaterial and incompetent).

" *Mr. Kilbourne:* I want to refresh the witness' recollection.

" (Objection sustained. Exception by Mr. Kilbourne).

" *Q.* Have you told all that you know about this affair?

"*A*. Yes, sir."

If the question objected to was necessary to refresh the recollection of the witness, its object was fully accomplished when asked. The witness unequivocally stated that he had told all he knew about it, and we think that no error was committed in excluding the answer.

On cross-examination witness was asked:

"*Q*. Did he [Whitehead] tell you what he had had him watched about?

"*A*. No.

"*Q*. Did he tell you that he had had the cars watched, to see whether some of that ice came down here that should not come here?

"*A*. No, sir.

"*Q*. Have you learned since that that is what he did do? (Objected to as immaterial. Objection sustained. Exception for defendant.)"

In defendant's brief it is contended that this testimony was admissible in mitigation of damages, but, as the court was not informed that such was the purpose of the question, it cannot be urged here. But the ruling was right. The question called for hearsay testimony.

O. F. Barnes, a witness for plaintiff, testified that he heard the latter portion of the conversation in which the alleged slanderous words were uttered. He said:

"I heard Mr. Whitehead repeat that Mr. Ellis was a thief, and that he would be able to prove it; and then I stepped forward.

"*Mr. Kilbourne:* I ask to have that stricken out. That is not the language. (This was consented to.)

"*Q*. Give us the language, as near as possible, used by Mr. Whitehead.

"*A*. Mr. Whitehead stated: 'Phile, Tom Ellis is a thief.'

"*Mr. Kilbourne:* That I ask to have stricken out.

"*The Court:* Those words are averred.

"*Mr. Kilbourne:* The words, 'Phile, Tom Ellis is a thief?'

"*The Court:* The rule, as I understand it, Mr. Kilbourne, is that the material words alleged in the declaration must be

proven exactly as alleged; and because some words are left out, or because some other words are added, which do not change the meaning, do not affect it. Go on. (Exception by Mr. Kilbourne.)

"*Q.* Now, go on, and state that.

"*A.* 'Phile, Tom Ellis is a thief, and I can prove it.'

"*Mr Kilbourne:* Now, I ask to have that stricken out, for the reason that it is not the language, or any language—any completed statement—used in the declaration.

"*The Court:* I will decline to strike it out. (Exception by Mr. Kilbourne.)"

This statement was not admissible to prove the charge laid in the declaration, but it would have been admissible to show malice had it occurred at a subsequent interview, being substantially a repetition of the slander. *Leonard v. Pope,* 27 Mich. 145; *Brown v. Barnes,* 39 Id. 213; *Beneway v. Thorp,* 77 Id. 181. It is certainly no less admissible because a part of the same conversation. Reiteration and emphasis on the occasion of the slander go to the question of malice. It was also properly received as a part of the *res gestæ,* the whole conversation being admissible. *Newman v. Stein,* 75 Mich. 402.

On redirect examination the witness Barnes was asked:

"*Q.* State to the jury whether or not every other member of that company consented to and recognized the right of Mr. Ellis to take that ice. (Objected to as immaterial.)

"*The Court:* Answer the question. (Exception by Mr. Kilbourne.)

"*A.* Yes, sir; they all consented; all but Mr. Whitehead."

The defendant's counsel had sought by cross-examination to develop his theory that the plaintiff had fraudulently taken ice belonging to his copartners, and applied it to his own use. We see no error in permitting plaintiff's counsel to show otherwise upon redirect examination. It was proper as bearing upon the question of malice.

The eighth assignment is based upon an objection to a question asked the witness Barnes by defendant's counsel upon cross-examination. The witness had testified that he had

received the money from the sale of ice from two houses, and that Mr. Renyx had received the money paid by the Cleveland Ice Company.

*Question by Defendant's Counsel:* " Do you remember what amount was received by you for the two houses that you sold, and the paper which you have indorsed here? (Objected to as immaterial.)"

The objection was sustained, but the witness proceeded to answer as to how much the defendant and other parties put in, and added:

" The parties who would have probably been individually responsible pecuniarily in an action for damages to the greatest amount were Mr. Whitehead and myself."

The witness seems to have covered the subject aimed at without specifically answering the question put, viz., that Whitehead was concerned over an increased liability by reason of Ellis' misappropriation of a portion of the ice, and that Barnes knew about it, and must have understood the language used as applying to that matter. We think that the defendant was not injured by this ruling.

The ninth error assigned was cured by the subsequent admission of the testimony.

On cross-examination defendant's counsel sought to put before the jury the contents of a bill of complaint filed in the Ingham circuit court in behalf of the defendant against the Lansing Ice Company. The object was stated to be to show that the witness Barnes had, as a member of the company, conceded a certain contract with the Cleveland Ice Company to be as alleged in said bill. The concessions of the witness were not material. He was not a party to the action, and had not undertaken to state what the contract was. Moreover, it appears to have been in writing, and its provisions were practically conceded upon the trial.

Witness was asked on redirect examination:

"*Q.* State the business occupation of Mr. Whitehead.

"*A.* Buyer of produce.

"*Q.* He is also a director in one of the national banks? (Objection by defendant's counsel.)

"*Mr. Montgomery:* It is offered for the purpose of showing Mr. Whitehead's business standing, and is of a good deal of consequence,—kind of slander from a man occupying his position.

"*The Court:* Answer the question. (Exception by Mr. Kilbourne..)

"*Q.* Will you state whether or not he is one of the directors of the City National Bank?

"*A.* Yes, sir."

This testimony was admissible, under the rule laid down in *Brown v. Barnes,* 39 Mich. 211.

James Wood, a barber, testified that on one occasion, subsequent to the conversation counted upon, in his shop, in the presence of his customers, the defendant said that "he had called Tom Ellis a thief to his face, and that he could prove it." This testimony was admissible. See cases cited above.

One Wheeler was sworn as a witness for the plaintiff, and testified to a conversation between the members of the Lansing Ice Company, at which both plaintiff and defendant were present, in the course of which it was agreed that they should go north and put up ice. In this talk plaintiff expressed the intention to put up ice for himself at the North. Again, the witness stated that a shed was erected next to ice-house No. 2, and he was asked if there was a difference in the ice put up in the different houses. Some of the ice was taken from a lake that had logs in it; some was injured by snow. The witness further stated that Ellis got his ice from the shed, which ice was never sold to the Cleveland parties, and that it was taken with the knowledge and consent of the Cleveland company, a member of that company being present at the time. This testimony was all admissible, bearing, as it did, upon the

question of Ellis' conduct in taking the ice.    It bears upon the question of fraud.

On cross-examination the witness was asked the following question:

"Is it also true that the Cleveland Ice Company withhold a number of hundred dollars because they claim damages against the Lansing Ice Company?"

An objection to the question was properly sustained.    The witness had testified clearly and explicitly that the Cleveland company made a claim for damages for the nondelivery of the ice, and the repetition was useless.

Defendant offered in evidence the contract between the Lansing and Cleveland companies.    This was offered as one of the circumstances, for the purpose of showing provocation, and as such was admissible.    But at the furthest this contract provided for the storage and sale of ice by the Lansing concern to the Cleveland company, and was fully covered by the admitted facts.    If, therefore, it be admitted that its execution was fully proved, defendant suffered no injury by the ruling of the court.

The nineteenth assignment of error relates to the refusal of the court to permit the introduction of testimony to show the proportionate interest of the several members of the Lansing Ice Company, and especially that of the defendant, who claimed to own a one-third interest in the concern.    If it was competent to show provocation in mitigation of damages, it was clearly proper to show that defendant had an interest in the concern; otherwise he would have no occasion to be provoked.    But as it clearly appeared that he was one of the company of five, and the law presumes, in the absence of proof upon the subject, that the parties were equal partners, we cannot discover that the exclusion of this testimony injured the defendant. It will not be presumed that the difference between one-

fifth and one-third would make any appreciable difference in the degree of irritation.

We see no material error in the exclusion of the testimony sought by the question: "State whether or no the terms, so far as the quantity of ice to be sold, were settled while Mr. Bement and Mr. Ellis were present." The negotiations ended and were merged in a written contract, known to and understood by all, the substance of which was in evidence, and the absence or presence of Mr. Bement and Mr. Ellis does not appear to be significant.

The twenty-fourth assignment is without foundation, as the testimony alleged to have been excluded appears in the record.

The remaining assignments of error pertain to the charge. The defendant asked the court to give the following:

"1. If the jury find that the words charged in the declaration were actually uttered by the defendant, and that they had reference solely to the actions of plaintiff in shipping ice from the ice house or houses filled under the contract with the Lake Erie Ice Company, and to the attempt of plaintiff to induce defendant to keep all information relating to such shipments from said Lake Erie Ice Company, and that the persons who heard the alleged language had full knowledge of such action of plaintiff, and understood the language of defendant to apply solely to such shipments of ice, then the words used were not slanderous, and the verdict must be for the defendant.

"2. If the jury find that the words charged in the declaration were uttered by the defendant in a conversation with persons who were familiar with the contract between the Lansing Ice Company and the Lake Erie Ice Company, and with dealings with the plaintiff thereunder, and if such persons understood the language used was intended to refer solely to such dealings, or were then and there so fully informed by the defendant of the action of the plaintiff in shipping ice contracted to the Lake Erie Ice Company to Lansing, and of his attempt to persuade defendant to conceal such action from said Lake Erie Ice Company, that they must have understood it to refer to

said shipment of ice and said attempt at concealment, and to have no other or greater meaning, then the language used was not slanderous, and the verdict must be for the defendant.

"3. If the jury find that the defendant said in the presence of Messrs. Daniels, Barnes, and Rowley that, if Ellis had been taking the ice contracted to the Lake Erie Ice Company and shipping it to Lansing to Daniels & Ellis, such ice was stolen, and its shipment here no more or less than thieving on the part of Ellis, the same is not slander, and the verdict must be for defendant.

"4. If you find that there had been a misunderstanding between Mr. Ellis and Mr. Whitehead in relation to the shipment of ice from the Town Line lakes to Messrs. Daniels & Ellis, at Lansing, and that Mr. Whitehead believed that such shipment put him and the Lansing Ice Company in a dishonorable position in relation to the delivery of the ice to the Cleveland purchasers, and would subject him and the company to a lawsuit and payment of damages, and that, being angered in this belief, he uttered the words charged in plaintiff's declaration, not to impute a crime to Mr. Ellis, but by way of indignation and vituperation, such speaking does not constitute a slander, and your verdict must be for the defendant.

"5. If you find that the utterances charged in the declaration were made by the defendant, but that they referred to the taking of ice in such a way that they could not be larceny, and that the utterances were so understood by Daniels, Barnes, and Rowley, such utterances could not be actionable, and your verdict must be for the defendant.

"6. You are to determine from all the proofs the language used, and if you do not find by preponderance of evidence that the language charged, or the material part thereof, is proved to have been uttered by the defendant of the plaintiff, your verdict must be for the defendant.

"7. Before you can return a verdict for the plaintiff, you must find that one of the slanderous utterances set out in the declaration was uttered by the defendant as charged, and that it was intended by the defendant, and understood by the hearers, to charge the plaintiff legally with being a thief.

"8. Words that by themselves import the charge of a crime if unexplained, may be rendered harmless by the circumstances and occasion, if they show that the imputation of a crime was not understood.

"9. If you find that the language uttered as set out in the declaration was in response to the inquiry of the witness Daniels, who was then the business partner of the plaintiff, and that the defendant accompanied such language with a statement of claimed facts, which explains the language and gave the information asked for, such language and statements were privileged."

The gist of the first, second, third, fifth, and eighth requests appears to. be that, if the language was used in relation to circumstances which could not or did not constitute larceny, and was so understood by all the hearers, no slander was proved. The court did not give these requests as presented, but did say to the jury:

" If the language of the defendant, under the circumstances, did not charge the plaintiff with larceny, and if none of the hearers understood it as charging him with larceny, then the defendant is not guilty."

Again he said:

" The word [thief] may be so used, qualified, or explained as to show that it was intended to have a different and unusual meaning, and not to mean larceny, or any crime at all."

" Mr. Ellis, the plaintiff, did not commit the crime of larceny in taking this ice, and no one now claims in this case that he did. And if defendant's language used on the occasion complained of, taken as a whole, and all of it, did not, according to its fair meaning under the circumstances, charge plaintiff with larceny, or if the hearers did not understand that it charged him with larceny, but that it simply charged him with doing some unfair or improper or dishonest thing, not amounting to larceny, as the hearers understood it, then defendant is not guilty, for then he would not charge plaintiff with crime, and the charge of crime is the gist of the alleged slander."

This was a fair presentation of the question.

The sixth and seventh requests were given in substance.

The fourth request should not have been given. It makes the slander depend entirely upon the intention of the defendant, and, in effect, says that vituperation is not

slander when provoked, though it transcend the bounds of truth and propriety. It is going sufficiently far to say that a person may without liability call another a thief under circumstances which show he does not mean it. To hold that he could do so in the absence of qualifying circumstances, and shelter himself behind a provocation, real or imaginary, adequate or inadequate, would carry the rule much too far. In actions for defamation it is immaterial what meaning the speaker intended to convey. He may have spoken without any intention of injuring another's reputation, but if he has in fact done so he must compensate the party. He may have meant one thing and said another. If so, he is answerable for so inadequately expressing his meaning. *Hankinson v. Bilby,* 16 Mees. & W. 445, 2 Carl. & K. 440; *Sternau v. Marx,* 58 Ala. 608; Cooley, Torts, 209.

The case of *Ritchie v. Stenius,* 73 Mich. 563, cited in support of the proposition, comes far from sustaining the doctrine contended for. The charge complained of in that case was as follows, viz.:

"If you find that he did use the words charged in the declaration, but that they were the mere outburst of excitement and passion, induced by the conduct and actions of the plaintiff at defendant's house and in plaintiff's saloon, and were not intended to charge the plaintiff with the commission of a crime, and if those who heard them did not understand that they charged the commission of a crime, but were produced by the result of the excitement so produced, your verdict must be for defendant."

Here the trial court kept carefully in view the effect upon the hearers, as well as the intention of the defendant. The plaintiff appealed, and the appellate court was not called upon to consider the point involved here.

Slander, like other wrongs, is actionable because injurious, and, while intention may have much to do with the question of damages, it is not necessarily involved in the question of guilt.

The ninth request was based upon the doctrine of privilege. We find nothing in the case calling for instruction upon the subject.

The remaining assignments of error relate to the charge as given. Passing the thirty-fourth, which states some fundamental principles, pertinent to the general subject, correctly, we find that those remaining have been covered by the discussion of the court's refusal to give defendant's requests. The charge as a whole was exceptionally fair and clear, and correctly states the law which should govern the case.

The judgment will be affirmed, with costs.

The other Justices concurred.