## HINCHMAN *v.* KNIGHT.

1. Slander—Evidence—Exceptions—Appeal.

   The defendant in an action for slander cannot complain because the judge limited certain evidence to mitigation of damages, where no exception was taken, and his counsel stated it was not offered in justification.

2. Same—Words Actionable Per Se.

   Testimony in an action for slander, showing that plaintiff was in possession of certain goods, does not warrant an instruction that the words, "You broke in there and stole some goods, the other day, out of the house," are not actionable *per se*, where it does not appear that defendant and all the hearers knew the circumstances which rendered it impossible for plaintiff to steal them.

3. Same—Instructions.

   Where the court, at the request of plaintiff, instructed the jury that, if they found that defendant used the language charged in the declaration, their verdict must be for plaintiff, and, at the request of defendant, instructed them that the words were not actionable unless intended to impute a crime, and that the action could not be maintained if they were accompanied by an explanation showing a crime was not committed, the jury must have understood that the instruction given at the request of plaintiff was qualified by those given at the request of defendant, and the question whether the language was actionable *per se* was left to the jury.

4. Same—Damages.

   Where, under the testimony in an action for slander, the words used were actionable *per se*, and the judgment was for $60, defendant was not injured by an instruction that, if the words were intended and understood to charge only a trespass, the jury should not award any damages that would be excessive.

Error to Berrien; Coolidge, J. Submitted October 19, 1902. (Docket No. 236.) Decided March 30, 1903.

Case by Burwell Hinchman against David Knight for

slander. From a judgment for plaintiff, defendant brings error. Affirmed.

*Lawrence C. Fyfe* and *George W. Bridgman*, for appellant.

*O'Hara & O'Hara*, for appellee.

Hooker, C. J. The defendant has appealed from a judgment of $60 in a slander case.

Defendant owned and had rented a building to Jones. In January, 1900, Jones was in Chicago; and on January 12, 1900, acting under her husband's direction, his wife locked the house, and delivered the key to the plaintiff, to whom Jones was indebted in the sum of $12, or thereabouts. About the same time plaintiff received the following letter :

"Mr. B. Hinchman.

"*Dear Sir:* I came over to Chicago to close deal with Standard Oil Company to work then in Michigan, and expected to go back the same day, but was disappointed, and am obliged to wait until Monday.

" I can get no money until deal is closed, or would remit in this letter.

" As you know, my wife has been sick for some two weeks past, and is deemed best by all that she come to mother's and place herself under our old physician's care. I am sending for her, and have instructed her to lock house and leave key with you personally. I do this as evidence of good faith, to be held on your part as security for the debt I owe you until I arrive at home and pay you. Rent is paid to February 1st, and I don't owe D. Knight one cent. I trust this arrangement will prove satisfactory to you, and I will be greatly obliged to you, and will certainly be back in Sawyer not later than Monday of next week, prepared to pay you.

　　　　　　　　" Yours truly,

　　　　　　　　　　" Charles H. Jones."

Jones' furniture was worth about $60. His wife having gone to Chicago, where her husband was, plaintiff became uneasy about his claim; and about February 10th he went to the house with McDonald, a constable, and Tatro, a

teamster, with the intention of taking the furniture away, but concluded not to do so. A few days later, having given an assignment of his claim to one Snyder, the latter obtained an attachment; and on February 12th he, with the plaintiff and McDonald and McCarton, who had also assigned a claim to Snyder, went to the house for the purpose of attaching the property. The defendant was there, fixing the fence, and expostulated against their taking the goods; and he and the plaintiff got into a quarrel, in the course of which defendant is alleged to have said to the plaintiff, in the presence of the others: "God damn you! You broke in there and stole some goods, the other day, out of that house."

Counsel for the defendant claim to have offered testimony tending to show Hinchman's possession of the property, and that, while the court admitted it, he limited it to mitigation of damages, while it was competent by way of justification. No exception appears to have been taken to this when the court so limited it, and, furthermore, counsel for defendant expressly stated when the testimony was offered that they were not showing the previous transaction in justification.

It is clearly proved that Jones left his goods in his own home, which he placed in charge of Hinchman, to secure him for the amount that Jones owed him, by giving him the key to the house. It is claimed on behalf of the defendant that this gave Hinchman the possession of the goods, and that, being in possession of the goods, he would not have stolen them had he broken open the house and taken them away, and therefore the words of the defendant, if spoken as alleged, did not charge larceny. It is plain that the plaintiff did not steal the goods, for he did not take them; but, upon plaintiff's theory, it must be conceded that the defendant charged him not only with taking them, but stealing them. If it could be said that the proof showed that the circumstances alluded to were fully understood by the defendant and by all of the hearers of the charge, it is possible that the charge, as intended and understood, would

not be a charge of crime, slanderous *per se*. But this cannot be said, because, so far as the record shows, neither the defendant himself, nor all of the hearers of the slanderous words, knew anything about the circumstances referred to. It is possible that McDonald did, and certainly the plaintiff did, but there is nothing tangible to indicate that Snyder or McCarton did; and the language alleged was a plain, unambiguous charge of larceny, which, under the rule of *Ellis* v. *Whitehead*, 95 Mich. 105 (54 N. W. 752), would justify, if not require, a charge that it was slanderous *per se*, in the absence of circumstances tending to show that it was used in a qualified sense. The testimony in the case did not warrant an instruction that these words were not actionable *per se*, and the court committed no error in refusing to so charge. If he left the question to the jury, this was as favorable treatment to the defendant as he had a right to expect.

It is claimed, however, that he did not leave the question to the jury. He opened the charge by reading to the jury several requests by the respective parties, as follows:

For the plaintiff:

"1. If the evidence in the case satisfies you that the defendant, at the time and place charged in the declaration, used the language charged in the declaration, your verdict must be for plaintiff."

For the defendant:

"1. The words claimed by the plaintiff to have been uttered are not actionable unless the defendant intended to impute the crime of larceny.

"2. The circumstances surrounding the speaking of the words may be given in evidence to rebut the presumption of malice, and to show the circumstances under which the words were uttered. The defendant has always been and is permitted, in a case like this, to show the matter affecting the meaning of the alleged defamatory language. An action cannot be maintained where the words, although imputing a crime, were accompanied by such an explanation as showed that the crime was not committed. Explanatory circumstances, known to all the parties,—speakers and hearers,—are to be taken into account, then,

as part of the words. The test in such cases is the knowledge possessed by those to whom the language is published.

"3. If the language of the defendant, under the circumstances, did not charge the plaintiff with larceny, and if none of the hearers understood it as charging him with larceny, then the defendant is not guilty."

"5. If defendant's language used on the occasion complained of, taken as a whole, or all of it, did not, according to its fair meaning, under the circumstances, charge plaintiff with larceny, and if the hearers did not understand that it charged him with larceny, but that it simply charged him with doing some unfair or improper or dishonest thing, not amounting to larceny, as the hearers understood it, then defendant is not guilty."

It is urged that plaintiff's first request is diametrically opposed to the requests given for the defendant; and it is clearly inconsistent with them. But we think that the jury could not fail to understand that it was qualified by the requests given for the defendant, and we are of the opinion that the case should not be reversed upon that ground, even if defendant's counsel are right in their contention that the court could not properly charge that the words were actionable *per se*. Furthermore, the testimony in the case did not admit of an inference that the language, which was unequivocal, was intended and understood in a different sense than that naturally imported by the words.

Error is assigned upon the following portion of the charge, viz.:

"The defendant claims that he had good reason to believe, and did believe, that the plaintiff had entered the house of one Jones, and had unlawfully taken goods therefrom; that this was committing a trespass. His attorneys also claim that, whether he used the word 'stolen' or not, he intended only to charge the plaintiff with a trespass, and that the hearers so understood it at the time. Now, if this be so,—if the hearers understood that defendant was only charging an unlawful act, and not a theft, and he did not intend to charge theft,—then the offense in such case would only be trivial. In such case you could not award any damages that would be— That is, you must

avoid rendering any verdict that would be excessive. It is for you to determine whether it is the fact. If the defendant had no good reason to believe, and did not believe, that plaintiff had entered the house of Jones and taken goods therefrom, the accusation would be reckless and malicious."

It is said that, if the words charged only a trespass, they were not actionable, in the absence of an allegation and showing of special damage, and that the judge erred in saying that in such a case the jury "should not award any damages that would be excessive." This point would be well taken but for the fact that, under the testimony, the court might have justly said that the words were actionable *per se*. *Youngs* v. *Adams*, 113 Mich. 200 (71 N. W. 585); *Ellis* v. *Whitehead*, 95 Mich. 105 (54 N. W. 752).

The judgment is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred.