LINE *v.* SPIES.

1. SLANDER—ACTIONABLE WORDS.
   To say of another, "He is a thief," is prima facie actionable.

2. SAME—EVIDENCE—SURROUNDING CIRCUMSTANCES.
   In an action for slander the surrounding circumstances and connection in which the words were used may be shown for the purpose of proving that the words could not have been understood as imputing a crime.

3. SAME—CIRCUMSTANCES.
   Language used toward another is actionable if, in the circumstances under which it was used, the hearer would reasonably understand that it was intended to impute a crime.

4. SAME—DAMAGES.
   In an action by an attorney for slander, where there is no evidence of injury to plaintiff in his profession, it is error to leave that question to the jury.

Error to Menominee; Stone, J. Submitted January 12, 1905. (Docket No. 4.) Decided March 28, 1905.

Case by Charles Line against Augustus Spies for slander. There was judgment for plaintiff, and defendant brings error. Affirmed conditionally.

*L. D. Eastman* (*George H. Peaks,* of counsel), for appellant.

*Charles Line,* in pro. per.

MONTGOMERY, J. This is an action on the case for slander. The words charged in the declaration are, "He (meaning plaintiff) is a thief." On the trial the defendant denied having uttered the words. Plaintiff's case was made in the main by the testimony of John Stiles. Mr. Stiles was at the time sheriff of Menominee county, and in

his official capacity had received from plaintiff, who was city attorney of Menominee, some papers to serve on the defendant. The witness Stiles testified that the defendant made use of the language imputed to him by the declaration. He further testified that a controversy had arisen between the city of Menominee and the defendant over the assessment of certain lots owned by the defendant for the construction of a sidewalk, and that defendant claimed the assessment was illegal, and was angry about it.

On cross-examination the witness testified as follows:

"*Q*. And you understood that what he said had reference to the action of the city council with regard to the construction of that sidewalk, did you?

"*A*. What do you mean—by calling Mr. Line that name?

"*Q*. No, repeat the question to him. (Question repeated.)

"*A*. The conversation we had led from that I served the papers from the city suing him.

"*Q*. You understood in a general way that is what the trouble was about?

"*A*. Oh, yes; there wouldn't have been any trouble if I hadn't served the papers.    *    *    *

"*Q*. Did you understand by what Mr. Spies said about Mr. Line that Mr. Spies intended to accuse Mr. Line of having stolen anything, and, if so, what?

"*A*. He didn't say that he stole anything.    *    *    *

"*Q*. You didn't understand that he meant to impute the crime of larceny to Mr. Line, or that he didn't mean that Mr. Line had committed the crime of larceny; is that true?

"*A*. Yes; I didn't consider that Mr. Spies meant it, because he was excited, and I didn't pay any attention to it; that is, it didn't make any impression upon my mind that Mr. Line was a thief.

"*Q*. You didn't believe it?

"*A*. No, sir.

"*Q*. You understood that it was simply the vituperation of an angry man, who thought he was being unjustly dealt with by the city council of the city of Menominee; is that true?

"*A*. Yes.

" *Q.* You didn't understand that Mr. Spies meant to say that Mr. Line had stolen anything, did you ?

"*A.* Well, I didn't know whether he knew that he stole anything."

On redirect he testified:

" *Mr. Power:* You say you didn't understand him to mean that he had stolen anything. Wasn't he serious when he said that Line was a thief ?

" *A.* Yes, he was very angry, angry and serious, loud and boisterous."

It was contended at the circuit, and is strenuously insisted in this court, that the testimony of this witness conclusively shows that it was not the intention of defendant to impute a crime to plaintiff by employing the language charged, and that the witness Stiles did not so understand the language, and that, therefore, the court should have directed a verdict for defendant as requested. There can be no doubt that the language counted on is prima facie actionable. It is also settled by our adjudications that the surrounding circumstances may be shown, and the connection in which the words are used put before the jury for the purpose of showing that the words could not have been understood as imputing a crime. *Ritchie* v. *Stenius,* 73 Mich. 563 ; *Ellis* v. *Whitehead,* 95 Mich. 105 ; *Youngs* v. *Adams,* 113 Mich. 199.

It is also unquestionably true, as contended by appellant's counsel, that if, upon the showing made by the plaintiff's witnesses, taken as a whole, it appears that the language used was employed in a connection which of necessity precludes the idea that a crime was charged, or if the language taken as a whole could not have been understood as imputing a crime, the words are not actionable per se.

We do not, however, find that the circumstances of this case conclusively show that that charge is not to be given its ordinary meaning. In reaching this conclusion we discard the test of the impression actually made upon the mind of the witness Stiles as to the fact of plaintiff's guilt

of the crime charged.   It will not do to say that slander-
ous words are any the less actionable because uttered
in the presence of those only who have such confidence in
the plaintiff that belief in the truth of the charge made is
withheld.   The law presumes some damage from such a
slander, and will not enter into nice calculations to learn
whether the impression made upon the mind of the hearer
leads to present belief in the truth of the charge or re-
mains dormant to be fanned into a belief, more or less
strong, by some future circumstance.

We think a fair construction of the testimony of the
witness Stiles by no means leads to the conclusion that it
is conclusively shown that the language imputed was used
in a sense, or would by reasonable men be understood as
having been employed in a sense, which restricted the
meaning to something else than a charge of larceny.

It is to be noticed that the controversy between the city
and defendant did not relate to any matter with reference
to which any act of plaintiff could be characterized by the
use of the word "thief," that word having for the time
and occasion a different meaning.   The controversy, it is
true, furnished the *occasion* for the use of this term, but
does not *explain* it, or give a conclusively different color
to its meaning.

The circuit judge, in charging the jury, made use of the
following language:

"Now, gentlemen, what were the circumstances?   Were
the circumstances such that a reasonable man would have
understood on that occasion that the defendant was im-
puting a crime to the plaintiff; or has the explanation
been sufficient to show you that this language, even if ap-
plied to the plaintiff, was not intended to impute to him
the crime of larceny?   This is the turning point, in my
judgment, in the case, gentlemen."

Later in the charge he said:

"Now, gentlemen, you will take this case, and look it
over carefully, bearing in mind that the plaintiff has the
burden of proof here to establish the use of these words in
the first place; that they were used; that they were used

in a sense intended to impute a crime, or at least so that bystanders would understand that they were intended to impute a crime, to the plaintiff."

It is contended that by the first instruction above quoted the court placed the burden on the defendant of showing that the words were used in a peculiar sense, and that the use of the words "sufficient to show you," etc., implied a necessity for something more than a preponderance of evidence. In view of the instruction last above quoted, it is altogether clear that no such construction could have been given to this language by the jury.

We understand defendant's counsel to contend that the first quoted instruction is faulty in another respect. The contention is made that the true test in determining whether the words were actionable is how they were in fact understood by the bystanders, rather than how they would have been understood by a reasonable auditor. The authorities are not agreed upon this question. There are cases holding that the understanding of the words by the bystander cannot be given in evidence. It is clear such testimony cannot be used to aid an innuendo or enlarge the meaning of the language actually employed. There are, however, cases which hold such testimony competent in cases like the present, and some which go the length of making the actual understanding of the bystander the test of liability. We think, however, the better rule is that the language is actionable if, in the circumstances under which it is used, the hearer would reasonably understand that it was intended to impute a crime. See Newell on Slander and Libel (2d Ed.), p. 308 et seq.

In *Ellis* v. *Whitehead*, 95 Mich. 105, the trial judge appears to have made the question turn upon the understanding of the bystanders; i. e., what that understanding was in fact. The defendant brought error. It is manifest that the charge was sufficiently favorable to the defendant, and it was stated by the court that the charge was a fair presentation of the case. The precise question here involved was not presented.

In *Youngs* v. *Adams*, 113 Mich. 199, the charge stated:

"Explanatory circumstances, known to all of the parties, speakers and hearers, are to be taken into account, then, as a part of the words. * * * The test in such case is the knowledge possessed by those to whom the language is published. The question now is not what the defendant meant by the words he spoke, but what reasonable men, hearing the words, would understand them to mean."

This court, speaking through Mr. Justice HOOKER, said:

"The foregoing instruction was elaborated and applied to the question in the case, and, in our opinion, made it plain that the defendant should not be found guilty if the circumstances showed that the words ought not to have been understood in their ordinary sense. This charge follows the rule laid down in *Ellis* v. *Whitehead*, 95 Mich. 105, where a similar question was considered."

It will be seen that these cases recognize the test to be what the language employed would import to a reasonable man. The charge was not erroneous upon the ground stated.

The charge upon the subject of damages was as follows:

"He claims injury in his declaration, and I use the word, meaning to use it; that the declaration, fairly construed, would mean that he has been prejudiced and injured in his good name, fame, credit, reputation, and profession, and has been thereby and is greatly injured and hurt in his feelings. Wherefore the said plaintiff alleges that he is injured, and has sustained damages. I think the declaration sufficient for you to consider those matters. But, gentlemen, there being no evidence of any specific damages, it would be simply such damages as, in your judgment, under all the circumstances of the case, the plaintiff is entitled to recover by reason of the use of these words maliciously. If you shall say that they were used, I say intentionally, intending to impute a crime to the plaintiff, then the law will imply malice. * * * Remembering that there is no evidence here of injury at all to his property, and no claim in his declaration of injury to property."

The jury were also instructed to award separately dam-

ages on account of injury to feelings and all other damages, under 3 Comp. Laws, § 10424. The verdict was $500, $350 of which was for injury to feelings and the balance for other damages.

There was no evidence of injury to plaintiff in his profession. We feel constrained to hold that the instruction was erroneous in leaving this question to the jury. *Smedley* v. *Soule*, 125 Mich. 192; *Derham* v. *Derham*, 123 Mich. 451.

The judgment will be reversed, with costs, unless the plaintiff shall elect to remit the sum of $150 from the judgment as of its date, in which event the judgment will be affirmed, but with costs of this court to the plaintiff in error.

MOORE, C. J., and CARPENTER, OSTRANDER, and HOOKER, JJ., concurred.